First case is 10-72771, Gal v. Holder is submitted on the briefs. The first case to be argued is 14-50335, United States v. Moroyoqui-Gutierrez. Each side will have ten minutes. Good morning. Good morning. May it please the Court. Cara Hartzler, Federal Defenders, on behalf of Mr. Moroyoqui. Under the two-pronged dusky standard, Mr. Moroyoqui is clearly competent to stand trial because he understands the nature and consequences of the proceedings and can assist in his own defense. Thus, the Court should reverse the District Court's commitment order and remand in order to allow Mr. Moroyoqui to proceed immediately to trial. He was examined by two professionals? Correct, Your Honor. Did they both agree with that statement you just made? They both agreed that he was competent to understand the nature and consequences of the proceedings. They disagreed as to whether he could assist in his defense. Why is it the judge entitled to believe the way he wants? Well, because first of all, on the second prong, whether he can assist in his defense, the Supreme Court and this Court have held that the most important consideration for that factor is the defense counsel's opinion. And in this case, defense counsel clearly stated that Mr. Moroyoqui can assist in his own defense. That's the end of the story? That's the end of the story. Defense counsel says he's competent, that's it? For the assist in the defense. Let me ask you a question. Certainly. Why isn't the judge entitled to determine both prongs simply on the demeanor that he observes of the defendant in court? Well, this Court has held in about six different cases that there are various factors. The demeanor in court is certainly one of them. If the demeanor is a factor which can be considered, why can't it be the basis of the determination? It could be the basis. We would argue that certainly all three of those should be considered. It could certainly be one of those. But let's assume that the demeanor is considered and is the primary basis in this case. The district court itself stated that Mr. Moroyoqui's demeanor in court was perfectly normal, that he was a model defendant. So that actually cuts in our favor. A model defendant perfectly normal may be a person who is so depressed that he doesn't raise any objection to the proceedings. And the learned trial judge can observe that as being an abnormality. Well, I don't think that that was the case here. You may disagree with whether it was the case or was not the case. But as long as a judge can determine based on demeanor alone, is there anything in the record which says the judge did not take into consideration the demeanor of the defendant? The district court doesn't state that as one of the reasons for its decision. So I think that that's one of the first problems. But I would also point out that in terms of saying if you say that, well, someone who just sits quietly and doesn't necessarily dispute what's being said, just appears to go along with the proceedings, you're saying that a lot of defendants are incompetent. And you're essentially giving the district court the ability to determine that a very broad spectrum of being incompetent. What you're saying is that a defendant can't be found to be incompetent unless there is expert testimony that he is incompetent on both prongs. Your Honor, what we're saying is there has to be a... I mean, this isn't a malpractice case where you have to have expert testimony, is it? What we're saying is there has to be a preponderance of the evidence that Mr. Morioki was incompetent. Here, there is far from that. In fact, the overwhelming amount of evidence falls in the column saying that Mr. Morioki is incompetent. If you look at the factors that this court has traditionally considered, they do include the demeanor in court. They also include has the defendant acted irrationally. They also include, for instance, in the defendant's prior convictions, has the defendant ever been found incompetent before? Has there ever been an incompetence evaluation? In this case, since the time that Mr. Morioki seemed to first begin experiencing mental health problems, he's been convicted of seven offenses. There has never been a finding of incompetence, let alone has he ever been referred for an evaluation of incompetence. Who brought this to the attention of the court to begin with? We noticed an insanity defense, Your Honor, and then the government, because of that, basically stated that there may be some issues as to competence. Back to my question. What case says that if a defense lawyer says he's competent, that's the end of the story? In terms of the second prong, Medina. The Supreme Court case in Medina basically says that the defense counsel has the best informed view of whether a person can assist in his own defense. And then this court confirmed that, and I believe it was Dreyer. So we believe that we clearly went on the second prong. Go ahead. Go ahead. Finish it. Oh, I was just going to say that if you look at the first prong, the nature and consequences of the proceedings, this court has not required a very sophisticated understanding. What it's required is, can the defendant say, this is my lawyer, that's the prosecutor, that's the judge? In other words, does he know that he's on trial and that he can go to jail? Well, but it's delusional. He has many delusional ideas. There is some. And the delusions were fairly significant because the delusions went right to the heart of the case because the case involved entry into the United States. And if I recall, his delusion is, God speaks to me, the doors of David open to me, and I come in. So his delusion goes right to the heart of the criminal case, doesn't it, the mens rea? We absolutely agree that the delusion goes right to the heart of whether he believed that the nature and quality of the case was wrong at the time that he entered. We would disagree that his delusions have necessarily anything to do with his ability to understand that he is in criminal proceedings and that he can go to prison. In fact, the experts testified that he understood that he was being charged with a crime, that he knew he could go to jail. So I would disagree. While I understand the concern about his delusion, the delusion in this case is not necessarily anything to do with whether he understands what's going on in his criminal case. It's the delusion that has to do with the circumstances under which he believed that he could come to the United States. But the delusion goes to his belief that he's not guilty of the crime, correct? Yes, but that's the separate issue of insanity. And you can certainly assert an insanity defense but still be competent to go to trial. And those are two different standards under Jackson v. Indiana. I'm looking at Medina. I'm trying to find the section you're referring to that says defense counsel's opinion is dispositive. Your Honor, I actually don't have it with me, but I'd be glad to bring it on rebuttal. Fair enough. I'll reserve the rest of my time for rebuttal if that's all right. Thank you. Good morning. Good morning, Your Honors. May it please the Court, Michael Heyman, Assistant United States Attorney on behalf of the United States. Your Honors, I'll first start by pointing out to defendant's reply brief at page 17, where defense characterizes Medina as saying the single most important factor in considering the second prong is defense counsel's view. So I think even defense counsel would acknowledge that it's not the end all with respect to whether the district judge has the ability to look at the case independently. Gunther also says that it's the district court's duty to not necessarily take the word of psychologists or any other examiners and take an independent look at this case. Do you agree that Judge Benitez used the wrong standard in open court when he made his finding? I do agree that the district court, I think I would characterize it as misspoke, but absolutely when we're talking about Okay, well, let's start there for a second. Anybody can misspeak, but then that misspoken term was called to his attention and he declined to change it. He didn't say, gee, it was a slip of the tongue, I used the wrong standard. He persisted in it and said, basically, if you don't like it, appeal it. Your Honor, when the case had gone on, there had already been several hearings for this case, and we had already dedicated multiple hours to the issue. And I think what had happened is, you know, and this is partially speculation on part of all parties, but I think what had happened is at the end of the day, the court was fairly, I mean, he says it's pretty clear. I think at that point he was convinced as to the ultimate outcome. And should he have clarified it on the record? I think so. That certainly would have been the prudent thing to do. When he says I'm going to apply standard A, what did he say? I think by there's reasonable cause. And whoever, was it you who was there? It was. Who said that's not the right standard, it should be by preponderance? Oh, no, I'm sorry. That was defense counsel who said that's not the right standard. And he just kind of, he didn't agree with that. No, I wouldn't say that he didn't agree with it, Your Honor. I think he had had enough of the proceeding and had made up his mind. For whatever reason, he didn't say, yeah, you're right, it's the wrong standard, I misspoke. He didn't say it at that point, but that gets to the issue of the order that was ultimately issued. I think there's been a large. Let's talk about the order for a second. There was, your office proposed an order. I believe defense made an objection to it. Is that right? It is, Your Honor. And what I did was. He never ruled on the objection either. The court, I would take the position the court impliedly ruled on the objection. Well, whatever their position is, he never entered an order saying objection sustained, objection overruled. He just signed the order. What he did, Your Honor, was the objection came in the form of an e-mail from myself to the judge saying here's the proposed order, pointing out that defense counsel had objected to the language regarding the pre-order and subordinate standard. They filed a written objection to the order? There was no written objection. What did they file? To the best of my knowledge, there was no filing. What was the objection to the written order? How did that come to pass? The court had ordered myself to circulate a draft of the proposed order to defense counsel, which I did. Defense counsel and I parsed the language and got down to agreeing on everything but that one line in the order. So I had sent an e-mail with the proposed order to the district judge saying here's the proposed order. We disagree on the language regarding preponderance of evidence. And it was left at that. And I have, by the way, I have the e-mail with me if Your Honors would like to see it just in case. A couple of days later, the order comes out. But I think what's important to note here is there wasn't just a rubber stamping here. The district judge actually took that order and modified it. I mean, it's clear that the district court reviewed that order before he put his signature on it. And you'll see that in the last paragraph of the order where the proposed order had language that says, with lots of blanks in it to set up an additional hearing. The judge struck all that and added a stay of his own order. So it's clear that there was no rubber stamping here. And the judge knew exactly what he was doing and used that as an opportunity to do what district judges do all the time, which is clarify, you know, things that happen in open court. I'm sorry. I'm looking at the, was there a, did he revise the order or have it retyped or something? Because the order I'm looking at doesn't show any interleutination or any changes that I can. It doesn't, Your Honor. I mean, what I can do is I have the proposed order that's attached to that email, if Your Honor would like to see it, so you could see the difference in the proposed language by the government from what the court ultimately entered. Did he tell you to submit a second order? Is that what happened? No. He took the order that I had submitted and revised it himself. I submitted the order. Typed your name on the upper left-hand corner and everything? Oh, no. No, no. That's certainly done by me. You know, I'm looking at this document. Maybe I'm looking at the wrong thing here. It looks like ER2 perhaps. That's in the sealed excerpt, Your Honor? I have it as ER2. I don't know where it is. It bears Judge Benitez's signature. It's three pages. I don't see any changes or interleutinations. It looks like it was on your pleading paper. Yeah, that's accurate. Okay. So what changes are you talking about that he made? Your Honor, can I, would you mind if I submit the proposed order that was submitted? Do you know what he's referring to, Ms. Harsinger? I believe I do know. I don't have any objections. Sure. Okay. Thank you. How did we get from this draft to the one he signed? Pardon me, Your Honor? How did we progress from this draft, the one you sent by e-mail, to the one that's signed with his signature on it? All that happened was I submitted the e-mail that you're looking at at this point, and then a few days later, the order that you see in the excerpt for record is the one that was issued. So he may have altered it, didn't he? I think he absolutely did alter it. Thanks. So the next point, Your Honor, is keeping in mind that the way this entire situation started was the defense counsel put forth their expert to say the defendant is insane. And, of course, we understand that and appreciate that one can be insane but still competent to stand trial. But also, at some point, insanity can so overwhelm competence that, you know, you're neither insane nor are you competent. And at this point, this is the situation that we've encountered here. And if we look at the sealed excerpts of record, remember that this whole thing started with the defense's expert saying that he has a lack of insight into his delusions, which are experienced as real, and tend to dominate much of their thought process, including decision-making and behavior. So that's what the district court is sitting up there looking at from the defense counsel's own expert as the starting point in this analysis, the defense counsel's expert saying that his delusions dominate much of his thought process. And from there, with that sort of basis, he looked at all of these other statements that were made in the course of a multiple-hour evidentiary hearing and then came to the total conclusion that, based on all that information, that this defendant wasn't able to appreciate the nature and consequence of his proceedings or assist in his defense. What's his status now? Has he been treated, do you know? Your Honor, I attempted to find out within the last few days the exact, whether he was receiving any medication or whatnot, and I have not been able to find that out specifically. But as I understand it, he is not. Dr. Yanofsky said that not receiving medication for his disorder, because Dr. Yanofsky testified that this was not the type of delusion that was easily treatable by medication, and he was unusually calm. So there was no need to medicate him in terms of danger to other prisoners or whatnot. He was unusually calm in the proceedings as well as while he's incarcerated. And because of the circumstances, the order has been stayed and he's been in his local facility since then. Is he competent to stand trial now, do we know? There has been no subsequent evaluation post the August determination. So as far as we know, the condition from insanity on the day that he was arrested, nothing has changed since then as far as we know. I think the only other point, Your Honor, is to emphasize that the district court, I think, was very careful when he was doing this determination in considering what was in the best interest of the defendant. And while you won't find, as far as a strict construction of the dusky standard, a district judge's requirement to look what's in the best interest of the defendant, you see that multiple times throughout the record. And I think it's worth highlighting that the district judge said on multiple occasions that it's his duty to have an independent look at this. It's not the counsel that are the ones serving the time in prison. And so on and on again, we see that the district judge spent hours considering this and taking into consideration all of these circumstances. And for those reasons, the district court should be affirmed. I see here that in his order, he says, he's presently suffering from mental disease or defect, rendering him mentally incompetent to the extent that he's unable to understand the nature and consequences of the proceedings. My understanding is he knows what's in the best interest of the defendant. He knows what the charge he's up against. And he knows that he's entering the country without permission, right? But he believes that the doors of heaven and his hallucinations mean that he should be able to come. That generally is true, Your Honor. But in the cross-examination of the defendant's expert, the judge actually interrupted and said, wait a minute, did you discuss whether this defendant understood what was going to happen, the consequences of this proceedings with the defendant, and did you discuss that with the defense counsel? I mean, the expert said, no, I didn't discuss that because that wasn't the point of my evaluation. So it was almost left in a vacuum with respect to the defense counsel's expert as to whether that was actually discussed. And based on all the circumstances that were discussed, I think the judge ultimately determined that that wasn't the case. While I would agree with most of what Your Honor said, at the end of the day, the district judge wasn't convinced, and to the opposite, thought he didn't really understand what was going on in these proceedings and the potential consequences because he didn't understand the plaintiffs' experience. And I think the district judge didn't understand that either. And I think he felt that in the hand-off proceedings, he repeated that he wanted the district judge to be enlightened and that that's what would set him free. And coming from that starting point, he wasn't understanding what was going on. Kennedy. May I ask a question? Earlier, Ms. Hartzler said that one of the experts found that he was unable to assist in the defense, in his own defense. Was that the prosecution expert? It was, Your Honor. And his name was? Dr. Carroll. His first name escapes me. Matthew. Okay, thank you. Thank you. Thank you. Mr. Hartzler, you get the last word. First of all, Your Honor, I promised you a Medina site. That's 505 U.S. at 450. And that case from this court that confirms that is Dreyer, 705 F. 3rd, 951. I want to just start with the discussion that opposing counsel brought up about the district court acting in Mr. Morioki's best interest. We're certainly glad that the district court is taking the time to really consider what's in his best interest. But what's very important here is that Congress set up a particular standard. They set the standard in the statute that there has to be a preponderance of the evidence in order for a person to be found incompetent. And that goes to a very important fundamental interest of deprivation of liberty. We don't want to just send off people because we want to err on the side of caution and where we have a little bit of doubt. Congress said there has to be a preponderance. And here there simply wasn't that preponderance. Now, I'd also like to discuss a little bit about the idea... Do we review whether there was or was not preponderance de novo? No, Your Honor. And we agree that that's for clear error. You review for clear error, right? Right. But if there was ever a case that meets the clear error standard, it's this one. But Dr. Carroll on ER 28 says this man defendant cannot assist properly in his defense. That's an opinion of an expert. There's no question about his qualifications. Why isn't that a factual record from which an inference can be drawn which supports the judge's finding? Because it's not a preponderance. Because our expert said he can't assist in his own defense. Our defense counsel said that he can assist in his own defense. And the government's expert, when saying he couldn't assist in his defense... Doesn't preponderance have to do with weighing the quality of the evidence as well as the amount of the evidence? It certainly does. And if you look at the quality of the evidence, our expert was actually a lot better. Our expert spent 12 hours with Mr. Morioki. And the government expert only spent one hour. And frankly, I think that the idea that the government's expert can spend one hour and say, well, he doesn't have the ability to help his defense counsel is really overlooking the fact that defense counsel spent many, many hours with Mr. Morioki. Defense counsel has absolutely a desire to do what is best for Mr. Morioki. And he's actually here this morning. And he's spent a lot of time to try to do what is in the best interest of Mr. Morioki. Mr. Morioki, frankly, does not want to be committed. And Congress said that he doesn't have to be committed unless there's a preponderance of the evidence. And here there simply is not a preponderance of the evidence. If we agree with you, would you like us to clarify his findings? Or would you have us hold that he is competent, he should stay in trial? We would have you hold that he's competent, Your Honor. And that's partly for delay reasons, because this case has already taken a long time. And if it goes back, frankly, I think that there's a good chance Judge Benitez will find him incompetent and will be back here again. And we'll have two full appeals before he even goes to trial. So this court has all the information in front of it that it needs to make a decision on competence. There's been a full evidentiary hearing, two expert opinions, and it's simply our opinion that it was clear error that there was a preponderance of the evidence that Mr. Morioki is incompetent. Now, if we send it back and say he should have been found competent, what happens next? That he should have been found competent? Yes. He goes to trial. And that's exactly what we want here. We would also, I would just point out that in our briefing, we stated that the court might want to consider sending this back to another judge, because Judge Benitez did have very strongly expressed feelings about competency. If we hold him to be competent on this record, he goes to trial. If Judge Benitez sees that there's a reasonable basis to think he's incompetent, can't he order another competency hearing? He could. I don't know why. And if he does order another competency hearing, can he not find that the problems of the evidence this time shows that he's incompetent? That is possible, Your Honor. I'm not sure that that's necessary, but that would be an option. Why, if we were to hold that, viewing this de novo, your client is competent, he has a trial, why couldn't Judge Benitez try the case? Or take his plea or whatever he's going to do? He could, Your Honor, but Judge Benitez expressed some very strongly held beliefs, and the standard for... About what? His competence? About whether this was a proper defense, whether Mr. Morioki's insanity defense would be valid. Well, he may be right. He may be. Okay, so what's wrong with that? He may be. We believe that it would not be a duplication of resources. If you remand because you believe he's competent and it goes back to trial, if this goes to another judge, they can just start fresh. And we believe that that's the best option here. Well, you're kind of insinuating that this judge has no ability to step back and do something he wouldn't have done otherwise. I think what this goes to is the appearance of justice also, Your Honor. I'm not saying that this judge can't do it, but because there's been such a difficulty in coming to this point, I think it would be just better if we start fresh with another judge. Well, he worked hard on it. He put in a lot of time on it. He cared deeply for it. The justice was done. He got reversed. That's life. And that's certainly up to the Court's discretion. Yeah, I see your point. If we were to, say, go back and have another competency hearing, because he's already made it clear what he thinks about competency, but I'm having a hard time understanding why he couldn't try the case if he's deemed competent. We'll leave that up to the Court's discretion. It's just something that we wanted to put out there because it may be a concern. And frankly, at this point, what we'd like to do is just resolve this case as quickly and efficiently as possible. Gotcha. Thank you, Ms. Hartman. Thank you, Your Honor.
judges: Bell, Silverman, Bea